IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. _____

| UNITED STATES OF AMERICA, | ) |   |
|---|---|---|
|   | ) |   |
| Plaintiff, | ) |   |
|   | ) |   |
| v. | ) | **COMPLAINT FOR** |
|   | ) | **FORFEITURE IN REM** |
| $35,412.00 IN U. S. CURRENCY, | ) |   |
|   | ) |   |
| Defendant. | ) |   |
|   | ) |   |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, states as follows:

1. This is a civil action in rem brought to enforce the provisions of 18 U.S.C. § 2428(b)(1) providing for the forfeiture of property used or intended to be used to commit or to facilitate the commission of, and/or property constituting or derived from proceeds traceable to, a violation of the Mann Act, codified at 18 U.S.C. § 2421 (interstate transportation for prostitution or sexual activity); the provisions of 18 U.S.C. § 981(a)(1)(C) providing for the forfeiture of property constituting or derived from proceeds traceable to an offense constituting a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), including but not limited to interstate transportation for prostitution or sexual activity in violation of 18 U.S.C. § 2421, and/or dealing in a controlled substance or listed chemical as defined in the Controlled Substances Act, codified at 21 U.S.C. § 801 *et seq*; as well as the provisions of 18 U.S.C. § 981(a)(1)(A) providing for the forfeiture of property involved

1

in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, and 1960.

2. This Court has subject matter jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355(a). The Court has in rem jurisdiction by virtue of 28 U.S.C. § 1355(b). Venue in this district is proper by virtue of 28 U.S.C. §§ 1355(b) & 1395(b).

3. The defendant is $35,412 in United States currency.

4. The defendant was seized in Nashville, North Carolina and is currently located in the Seized Asset Deposit Fund Account maintained by the United States Department of Treasury, within the jurisdiction of this Court.

5. The potential claimants in this action are LAIYI MU ("MU"), TIANCHENG ZHENG ("ZHENG"), and AIMEI LIN ("LIN").

6. On January 19, 2024, ZHENG was driving a white Toyota Sienna minivan bearing New York license plate KYL7472.

7. On January 19, 2024, at approximately 1:44 p.m., ZHENG was stopped by the Nash County Sherriff's Office ("NCSO") in Nashville, NC.

8. NCSO Sgt. Andrew Smith stopped the vehicle for following a truck with a trailer too closely.

9. The vehicle was stopped on I-95 northbound.

10. NCSO Sgt. Smith walked to the passenger side of the van and spoke with ZHENG.

11. ZHENG indicated he did not speak English and that he spoke Chinese.

12. Due to the language barrier, Sgt. Smith used his phone to access an application to translate and communicate with ZHENG.

13. NCSO Sgt. Smith asked ZHENG for his license.

14. ZHENG presented his New York State driver's license.

15. While communicating with ZHENG, LIN, who had been lying down in the backseat almost as if she had been hiding, popped up from the backseat of the vehicle.

16. Sgt. Smith asked ZHENG who LIN was.

17. ZHENG responded with a significant delay and multiple pauses, and finally stated LIN was his mother-in-law's friend.

18. ZHENG laughed almost nervously as he provided Sgt. Smith answers.

19. Sgt. Smith noted ZHENG'S laughter was odd and differed from how most motorists generally acted when pulled over for a traffic violation.

20. ZHENG later told Sgt. Smith that LIN arrived from China that same day and was a friend's mother (not his mother-in-law's friend, as ZHENG initially stated).

21. ZHENG told Sgt. Smith that he picked LIN up from the airport in Raleigh and was taking her to New York.

22. Travel records show LIN was admitted into the United States on a B2 (visitor) visa on November 7, 2023, at JFK airport in New York. There is no record of LIN entering the United States on or about January 19, 2024, as indicated by ZHENG. A law enforcement database record check revealed that LIN departed the

United States on or about January 21, 2024, and that she has not returned to the United States.

23. Sgt. Smith asked ZHENG if he was carrying any large amounts of U.S. currency, more than $10,000. ZHENG initially stated, "no," but then said, "maybe $2,000 or $3,000 that was for the New Year." ZHENG was sitting in the front seat of Sgt. Smith's patrol vehicle at this time.

24. While waiting for the results of record checks, Sgt. Smith used his canine, K9 "Pinka" (who is trained to alert for narcotics), to conduct a free air sniff on the white Toyota Sienna and K9 "Pinka" alerted to a positive indication for the odor of narcotics.

25. During the free air sniff, LIN was seated in the backseat of the Toyota Sienna and ZHENG was sitting in Sgt. Smith's patrol vehicle.

26. Based on the positive alert by K-9 "Pinka," Sgt. Smith then conducted a probable cause search of the vehicle for narcotics. In the center console of the front passenger side of the vehicle, Sgt. Smith found a gray plastic bag that was folded over with another gray plastic bag. Sgt. Smith opened the bag and found a square shaped object that was wrapped in silver colored duct tape. Sgt. Smith cut the duct tape open, and discovered a sheet of clear plastic wrap, a paper towel, and a large amount of U.S. currency. The currency was wrapped and divided into 20 sets, each bound by a rubber band. There was also an envelope that had a large amount of U.S. currency within it.

4

27. The currency was placed on the hood of Sgt. Smith's patrol vehicle. ZHENG asked Sgt. Smith, "The money?" Sgt. Smith responded, "What do you think it was?" ZHENG stated "I don't know. I don't know. No, me," indicating the money was not his.

28. ZHENG said a man called him and asked him to pick the money up and take it back to New York. ZHENG said the address of the location where he was told to pick up the money, was on his phone. Sgt. Smith got ZHENG's phone and ZHENG showed the address to Sgt. Smith. ZHENG gave Sgt. Smith permission to take his phone and let law enforcement look at the address. Law enforcement reviewed the address and determined it led to a field.

29. On the driver's side dash of the Toyota Sienna, a black handbag was found. Inside the bag was a large amount of U.S. currency along with ZHENG's passport.

30. The following additional law enforcement personnel arrived on scene to assist: Drug Enforcement Administration (DEA) Task Force Officer (TFO) Sgt. Adams, NCSO Deputy Flynn, and NCSO Sgt. Loore.

31. ZHENG provided his phone number as (929) 382-03▮▮ (ZHENG's 03▮▮ phone).

32. ZHENG'S iPhone and both bundles of the U.S. currency were seized during the traffic stop. The currency was later transported to the NCSO and counted. The bulk currency found in the console of the Toyota Sienna totaled $29,980. The

5

bulk currency found in the black handbag, located on the driver's side dash of the Toyota Sienna, totaled $5,432.

33. Once at the NCSO, a blind three box test was conducted and K9 Pinka positively alerted at the box containing the seized U.S. currency.

34. On January 22, 2024, ZHENG and MU arrived at the NCSO. ZHENG and MU both claimed the $29,980 seized during the January 19, 2024 traffic stop belonged to MU.

35. MU gave her phone number to NCSO as (917) 730-96██ (MU's 96██ phone).

36. ZHENG stated he wanted his $5,432 returned.

37. MU stated she wanted her $29,980 returned.

38. MU stated the $29,980 was for her mother's medicine.

39. ZHENG and MU also stated the money was their tax money.

40. NCSO Sgt. Smith told ZHENG and MU that Homeland Security Investigations (HSI) was involved, and they would need to wait until the case went to court.

41. On January 31, 2024, HSI Raleigh seized ZHENG's iPhone, and the amount in total $35,412 ($29,980 + $5,432) in bulk cash obtained during the traffic stop as the items were believed to be associated with violations of 18 U.S.C. §§ 1956, 1957, 1960, and 2124.

42. Also on January 31, 2024, HSI Special Agent (SA) H. Bridges and NCSO Sgt. Smith transported the bulk U.S. currency to a Southern Bank branch. Southern

6

Case 5:24-cv-00574-BO    Document 1    Filed 10/07/24    Page 6 of 12

Bank provided an official count of the currency seized and converted the bulk cash to a cashier's check (#2198850) made payable "US Customs & Border Protection." Since ZHENG was the only violator identified on January 19, 2024, and since the currency came from the same vehicle, the different bundles of bulk U.S. currency were consolidated and only one check was issued for $35,412 ($29,980 from the duct taped bundle and $5,432 from ZHENG's bag).

43. On February 9, 2024, the U.S. Customs and Border Protection, Fines, Penalties, and Forfeitures Office received a claim from the law office of Pruden Law, PLLC on behalf of MU who claimed ownership of the $29,980 U.S. currency.

44. On March 6, 2024, the U.S. Customs and Border Protection, Fines, Penalties, and Forfeitures Office received a claim from the law office of Pruden Law, PLLC on behalf of ZHENG who claimed ownership of the $5,432 U.S. currency and the seized iPhone.

45. Database research shows the Toyota Sienna had recent, substantial travel between Delaware and North Carolina. A total of 66 plate reader hits were noted between the queried dates of November 24, 2023, and February 20, 2024. The results were limited to a 90-day period, therefore, it's possible there are additional plate reader hits that were not captured at this time. There was a mixture of north and southbound plate reader hits, as well as a mixture of day and nighttime travel. Most of the hits were close in time. For example, a Delaware northbound hit on January 6, 2024, at 3:32 a.m., another Delaware northbound hit later that same day

7

at 1:36PM. Then a southbound hit in Delaware the following day on January 7, 2024, at 8:36 a.m.

46. Database research shows driver ZHENG is a citizen of China. ZHENG entered the United States without inspection on or about November 26, 2009. In 2010, ZHENG applied for asylum, and was granted asylum withholding that same day. ZHENG has an approved United States Citizenship and Immigration Services Form I-765 (Application for Employment Authorization) that expired on May 17, 2024. Although he had an approved Employment Authorization, he also has been issued a Final Order of Removal by an Immigration Judge.

47. A toll analysis of phone records has revealed that MU's 96█ phone had 13 contacts/attempted contacts with telephone number (803) 849-98█ (98█ phone) between August 2023 and February 2024. Open-source records indicate that the 98█ phone has posted online hiring advertisements on www.168worker.com and 500work.com. These advertisements are posted in Chinese. Translation of the postings via Google revealed job postings from February 5, 2024, recruiting individuals under 42 years old with a "good image" for South Carolina. The posting is brief and contains no job title or specific location. The description only lists "mainly massage, with a touch of edge" when translated to English.

48. The MU 96█ phone contacted telephone number (609) 992-29█ (29█ phone) on one occasion in November 2023. Open-source records indicate the 29█ phone is the publicly listed number for the 3303 Spa located at 3303 Atlantic Ave, Atlantic City, NJ. Open-source records also show the 29█ phone listed on

8

advertisements posted on multiple websites commonly associated with prostitution/sex trafficking including "www.rubmaps.com" and "harlothub.com."

49. Based on training and experience, and consultation with state and federal agents conducting human trafficking investigations, websites such as www.rubmaps.com, and harlothub.com are known to be associated with the sex trade and sex trafficking.

50. Additional review of the tolls of ZHENG's 03▮ phone revealed approximately 160 contacts/attempted contacts between ZHENG's 03▮ phone and MU's 96▮ phone from November 2023 to February 2024.

51. ZHENG conducts an unlicensed money transmitting business which involves the transfer of funds by courier on behalf of the public in interstate commerce.

52. ZHENG is not licensed as a money transmitter with the North Carolina Office of the Commissioner of Banks under the provisions of N.C.G.S. § 53-208.43.

53. ZHENG is not licensed as a money transmitter with the New York Department of Financial Services under the provisions of Article 13-B of the New York Banking Law.

54. ZHENG is not registered as a money transmitting business with the Financial Crimes Enforcement Network (FinCEN) under the provisions of 31 U.S.C. § 5330.

55. Upon information and belief, at the time of the traffic stop on January 19, 2024, ZHENG was in the process of transporting U.S. Currency from North

9

Carolina to New York that he knew to be derived from a criminal offense or was intended to be used to promote or support unlawful activity, including, at minimum prostitution.

56. Upon information and belief, the defendant U.S. Currency constitutes or is derived from prostitution or other unlawful sexual activity performed by individuals who have been transported in interstate or foreign commerce with the intent to engage in such activity.

57. Upon information and belief, the defendant U.S. Currency constitutes or is derived from proceeds traceable to dealing in a controlled substance or listed chemical as defined in the Controlled Substances Act.

58. Through the course of the investigation, HSI/Raleigh learned ZHENG's 0331 phone contained an image of a business card for a suspected illicit massage parlor, "Healing Spa" located at 590 E. Chatham Street, Suite 106 in Cary, North Carolina, which agents suspect may be linked to MU.

59. On September 12, 2024, the Cary Police Department, with assistance from HSI/Raleigh, executed a state search warrant at the Healing Spa. Two female Asian massage therapists were present during the execution of the warrant. The Cary Police Department's investigation confirmed that sexual services were available to massage patrons for an additional fee of $40-$60.

60. During the execution of the search warrant, officers interrupted a patron as he received sexual services.

10

61. The defendant is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and/or 2428(b)(1).

WHEREFORE, in accordance with Supplemental Rule G(3)(b)(i), the plaintiff requests that the Clerk issue a warrant of arrest in rem for the defendant; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted this 7th day of October 2024.

                                      MICHAEL F. EASLEY, JR.
                                      United States Attorney

                                      By: /s/ Michael G. James
                                      MICHAEL G. JAMES
                                      Assistant United States Attorney
                                      U. S. Attorney's Office Civil Division
                                      150 Fayetteville Street, Suite 2100
                                      Raleigh, NC 27601
                                      Telephone: (919) 856-4530
                                      E-mail: mike.james@usdoj.gov
                                      N.Y. Reg. No. 2481414

## VERIFICATION

I, Heidi Bridges, Special Agent, Homeland Security Investigations, declare under penalty of perjury, as provided by 28 U.S.C. § 1746, that the foregoing Complaint for Forfeiture is based on reports and information known and/or furnished to me and to the best of my information and belief, is true and correct.

This the 7th day of October 2024.

*Heidi Bridges*
Heidi Bridges
Special Agent
Homeland Security Investigations